JAMES CAMPBELL v. THE NEW JERSEY DRY DOCK AND TRANSPORTATION COMPANY.

A master who furnishes to his servant safe and suitable appliances with which to do the work upon which he is engaged, is not responsible for injuries received by the servant by reason of defects in appliances substituted by a fellow-servant for those furnished by the master.

On rule to show cause why verdict should not be set aside.

Argued at November Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the plaintiff, *Johnson & German.*

For the defendant, *Frederick C. Marsh.*

The opinion of the court was delivered by

GUMMERE, J. The plaintiff is a ship carpenter in the employ of the defendant company. While at work with other employes of the company, lowering a tank into the hold of the "Wilkesbarre," a vessel which was laid up in the dry dock for repairs, one of the hooks on the tackle which was being used for lowering the tank broke, letting the tank down on his hand and crushing it. The liability of the defendant for this injury is sought to be established on the ground that it failed to discharge the duty which it owed to the plaintiff of furnishing proper tackle for the work in which he was engaged, and of inspecting and keeping it in repair, and that this failure was the cause of the accident.

The testimony of the plaintiff's own witnesses shows that this claim is without support. From that testimony it appears that the defendant company's tackle and hooks were kept in a shanty in the company's yard; that the work was being done under the supervision of one John Lyons, who is styled the "boss rigger;" that Lyons sent two of the men who were under him—Lang and Shields—to get the tackle and hooks to be used in lowering the tank; that Shields went to the company's shanty and got tackle and hooks from there, but that Lang, instead of following his example, picked up a tackle and hooks which he found lying on the deck of the "Wilkesbarre," and which belonged to that vessel, and not to the defendant corporation; that both sets of tackle and hooks were used in lowering the tank, one on each end of it, and that it was the hook on the tackle which was picked up by Lang on the deck of the "Wilkesbarre" which broke and let the tank down on the plaintiff's hand.

These facts make it clear that the defendant did not fail in the discharge of the duty which it owed to the plaintiff, of using reasonable care to provide safe and proper tools for his use in his work, and to keep them safe. It was not the company's tackle or hooks which broke. For the condition of the one which did break it was not responsible.

In the case of *Maher* v. *Thropp*, 30 *Vroom* 186, the plaintiff sued his master for injuries received by him while engaged in his master's work. It appeared that he was furnished with proper implements to do the work, but that, by the direction of his foreman, he undertook to do it with other tools, in consequences of which he received the injuries complained of. The Court of Errors, in deciding the case said : " If safe and proper tools are supplied by the master he is not liable for an injury which his servant receives by using, under the direction of the foreman over such servant, a tool not furnished for or adapted safely to the work."

The rule laid down in Maher *v.* Thropp governs the case before us. In fact there is even less merit in the present than in the cited case; for in the latter the unsafe tool was used with the knowledge and under the direction of the foreman, while in the present case it does not appear that Lyons, the " boss rigger," was cognizant of the fact that Lang, instead of bringing the needed appliances from the company's shanty, had picked them up off the deck of the " Wilkesbarre."

It was proved in the case that it was a matter of frequent occurrence for the company's employes to use blocks, tackle and hooks belonging to vessels which were under repair, instead of those which were furnished by the company, and we are told that this fact establishes the liability of the defendant for the plaintiff's injury. I am not able to appreciate the force of this contention. It does not appear that the company had any knowledge of this custom of its employes, but even if it were otherwise the result would be the same. The master discharges his duty to his servants by furnishing them safe and proper tools to work with ; if they see fit to use other appliances, in the stead of those furnished by him, they

do so at their own risk, and cannot hold him responsib'e if such substituted appliances turn out to be unsafe for or unadapted to the work in hand.

The jury having found for the plaintiff in this case, their verdict should be set aside and a new trial ordered.